IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANDRES A. PERDOMO, § | |
| § | |
| Plaintiff, § | |
| v. § | Civil Action 3:15-CV-2075-N-BK |
| § | |
| MORTGAGE ELECTRONIC § | |
| REGISTRATION SYSTEMS INC., § | |
| et al., § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management. The Court now considers Defendants' *Motion to Dismiss for Failure to State a Claim*, Doc. 6, and the *pro se* Plaintiff's *Objection to Notice of Removal*, Doc. 7. For the reasons outlined below, it is recommended that Defendants' motion be **GRANTED**, and Plaintiff's objection be **OVERRULED**.

**I. BACKGROUND**

In April 2015, Plaintiff filed an action in state court against Defendants in regard to the foreclosure of real property located in Desoto, Texas (the "Property").[1] The case stems from a note ("Note") and deed of trust ("Deed") that Gerald and Cynthia Miller executed in connection with their purchase of the Property. Doc. 1-2 at 22-43.[2] Plaintiff brings suit as trustee of the

---

[1] Pages five through 12 of the state court petition are not in proper sequential order. *See* Doc. 1-2 at 5-12.

[2] The documents cited herein are attached to and referenced in Plaintiff's complaint as well as Defendants' motion to dismiss and thus can be considered in addressing the dismissal motion. *In Re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (when considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims).

trust that subsequently purchased the Property from the Millers via warranty deed. Doc. 1-2 at 48-49, 52-53, 61. The original lender on the Millers' Note was Defendant Available Mortgage Funding, LLC ("AMF"), and the original beneficiary of the Deed was Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"). Doc. 1-2 at 51. An allonge to the Note executed on the same date as the original loan is endorsed from AMF to Countrywide Document Custody Services and then to Defendant Countrywide Home Loans ("Countrywide"). Doc. 1-2 at 45. The allonge contains a blank endorsement from Countrywide to an unspecified party. Doc. 1-2 at 45. In April 2011, MERS assigned the Deed to Defendant Bank of New York Mellon ("BONYM"). Doc. 1-2 at 46. In August 2014, BONYM's loan servicer, Green Tree Servicing, sent a notice of acceleration and notice of foreclosure through counsel to Plaintiff's trust, stating that the loan was in default and advising of an impending foreclosure sale. Doc. 1-2 at 50-51.

In April 2015, Plaintiff filed a state court petition, raising causes of action for (1) breach of contract based on AMF's alleged failure to release the Deed when it received payment in full for the underlying Note; (2) slander of title on the basis that the April 2011 assignment of the Deed from MERS to BONYM was invalid because MERS had no interest in the Deed; (3) tortious interference with an existing contract on the basis that Defendants' attempt to wrongfully foreclose on the Property interferes with AMF's contract; (4) fraud due to MERS knowingly transferring the Deed as an alternative means of collecting on the Note when AMF had already sold the Note to Countrywide; (5) violation of the Fair Debt Collection Practices Act ("FDCPA") against BONYM because it allowed a third party debt collector to violate the FDCPA even though BONYM has no standing to collect on the Note; (6) declaratory relief to the

effect that Defendants do not have a right to foreclose on the Property based on the Deed; and (7) injunctive relief preventing the foreclosure sale of the Property.[3] Doc. 1-2 at 9-20.

Defendants removed the case to federal district court based on diversity and federal question jurisdiction. Doc. 1 at 4-8. They now move to dismiss Plaintiff's case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 6. Plaintiff has filed an objection to the removal of his case. Doc. 7.

## II. ANALYSIS

### A. Removal of the Action to Federal Court

Because Plaintiff has challenged this Court's subject matter jurisdiction in his *Objection to Notice of Removal*, Doc. 7, the Court must address that argument first. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (observing that a court must address its subject matter jurisdiction at the earliest possible stage since, without it, the case can proceed no further). Federal courts are courts of limited jurisdiction and may only hear cases authorized by the Constitution, federal statute, or treaty. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A defendant may remove a civil action from state court to federal court if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a). The removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists. *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998). Federal question jurisdiction exists when a federal question is presented on the face of the plaintiff's well-pleaded complaint. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 207 (2004). A federal district court has

---

[3] Defendants also interpret Plaintiff's complaint to include claims under the Real Estate Settlement Procedures Act, the Truth in Lending Act, and the Fair Credit Reporting Act. The Court does not read Plaintiff's fleeting reference to those acts so broadly as to give rise to any such claims.

3

original diversity jurisdiction of an action between citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

In this case, the first basis for removal presented by Defendants is diversity jurisdiction. Plaintiff does not dispute that he and Defendants are citizens of different states. He focuses instead on the amount in controversy requirement, claiming that he never alleged a damages figure in his complaint and Defendants have not positively established that more than $75,000 is at issue. Doc. 7 at 2. Defendants respond that the amount in controversy exceeds $75,000 because, according to the Dallas County tax appraiser, the value of the Property is $145,640. Doc. 8 at 3.

When a plaintiff seeks a declaratory judgment or injunctive relief, as in this case, "the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented." *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 910 (5th Cir. 2002). In particular, when "a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547-48 (5th Cir. 1961) (quotation omitted). Thus, if the object of the mortgagor's litigation is the protection of his entire property, as in this case, the fair market value of the property dictates the amount in controversy. *Bardwell v. BAC Home Loans Servicing, LP*, No. 11-CV-1002-B, 2011 WL 4346328, at *2 (N.D. Tex. 2011) (Boyle, J.). In support of the removal of this action, Defendants submitted an appraisal from the Dallas Central Appraisal District, valuing the Property at $145,640.00. Doc. 1-15 at 4-6. Accordingly, the amount in controversy requirement has been satisfied, and this Court retains subject matter jurisdiction over this case. *See Bardwell*, 2011 WL 4346328, at *2 (assessing amount in controversy based on the Dallas Central Appraisal

4

District's estimate of market value). In light of this determination, it is not necessary to address whether federal question jurisdiction exists.

### B. Merits of the Claims

#### 1. Split the Note Theory

A common theme running through Plaintiff's petition is that the Note and the Deed have been split due to various transactions among the parties, which nullified the Deed; thus, Defendants have no authority to foreclose on the Property. Doc. 1-2 at 19. This "split the note" argument has been roundly rejected, which should be the result in this matter as well. *Martins v. BAC Home Loans Serv., L.P.*, 722 F.3d 249, 254 (5th Cir. 2013) (holding that the foreclosing party need not possess the note where it is a mortgage servicer and the mortgage has been properly assigned). The Court of Appeals for the Fifth Circuit "has expressly recognized that MERS [as beneficiary and nominee] may assign a Deed to a third party and that such assignments confer the new assignee standing to non-judicially foreclose on property associated with that particular deed of trust." *Reece v. U.S. Bank Nat. Ass'n*, 762 F.3d 422, 425 (5th Cir. 2014) (citing *Martins*, 722 F.3d at 253-55). In sum, MERS's assignment of the Deed to BONYM was legally sufficient, and BONYM has the authority to initiate foreclosure proceedings on the Property.[4]

#### 2. Breach of Contract

Defendants argue that Plaintiff's claim for breach of contract against Defendants based on the alleged failure of AMF to release the Deed upon transfer of the Note is meritless because,

---

[4] Defendants' argument that Plaintiff lacks standing to argue that the assignment is void is meritless. *See* Doc. 6 at 15. The Court of Appeals for the Fifth Circuit has explicitly recognized that standing exists for homeowners who seek to prove that "assignments are void ab initio." *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013).

*inter alia*, he was in default on the Note. Doc. 6 at 16-18. Plaintiff responds that AMF breached the Deed by failing to release that document when it improperly sold the Note to Countrywide. Doc. 9 at 5-6.

Under Texas law, to plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). In this case, Plaintiff has not properly pled a cause of action for breach of contract because he does not allege that he performed or tendered performance under the contract. *Id.* Essentially, Plaintiff's breach claim relies on his allegation that the Deed and Note were not contemporaneously transferred and this split nullified the Deed. Doc. 9 at 6. This play on the previously disavowed split the note theory should be rejected, and Plaintiff's breach of contract claim should be dismissed with prejudice. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations).

### 3. *Slander of Title*

Defendants urge that Plaintiff's slander of title claim fails as a matter of law because he once again relies on a version of the split the note theory and does not assert facts supporting the required elements of a proper slander claim. Doc. 6 at 18-19. Plaintiff maintains that the filing of the April 2011 assignment of the Deed satisfies the elements of slander of title because, *inter alia*, the statement that the Deed is an alternative means of collection on the Note is false. Doc. 9 at 7.

To prevail on a slander of title claim in Texas, a plaintiff must allege and prove, among other things, that the defendant uttered and published disparaging words that were false. *Manders v. Manders*, 897 F.Supp. 972, 976 (S.D. Tex. 1995) (citations omitted). Here, Plaintiff's claim that there was a false statement is specious because the Deed was properly assigned as discussed above. Accordingly, this claim should be dismissed with prejudice. *McConathy*, 131 F.3d at 561-62.

### 4. *Tortious Interference with an Existing Contract*

Defendants contend that Plaintiff's tortious interference claim should be dismissed because he does not reference any existing contract or suggest that he suffered any particular damage as the result of intentional interference by Defendants. Doc. 6 at 19. Plaintiff does not discuss his tortious interference claim in his response to the motion to dismiss.

To establish a claim for tortious interference with an existing contract, a plaintiff must demonstrate that: (1) the plaintiff had a contract; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused plaintiff's injury; and (4) the plaintiff incurred actual damage or loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

A review of Plaintiff's complaint reveals that his tortious interference claim once again relies on his flawed theory that the April 2011 assignment of the Deed was void. *See* Doc. 1-2 at 16 ("At the time of the April 22, 2011 Assignment of the Deed of Trust, MERS did not have any right, title or interest in the Miller Deed of Trust as an alternate means of collecting the Miller Note, as AMF had already sold the Miller Note to COUNTRYWIDE."). Accordingly, Plaintiff's claim that Defendants wrongfully interfered with the AMF contract by attempting to proceed

with a wrongful foreclosure is meritless. Accordingly, this claim should be dismissed with prejudice. *McConathy*, 131 F.3d at 561-62.

    5. *Fraud*

  Defendants next argue, in relevant part, that Plaintiff's fraud claim is barred by the economic loss rule, which precludes a plaintiff from recovering economic losses in tort when the loss is subject to a contract claim. Doc. 6 at 21-22. Plaintiff responds that Defendants knew or should have known that the April 2011 assignment of the Deed contained fraudulent statements. Doc. 9 at 11.

  Under Texas law, the economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties. *See Southwestern Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Nevertheless, if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff may bring a tort claim in addition to a claim for breach of contract. The economic loss rule applies to real estate transactions. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

  To determine whether a plaintiff may recover on a tort theory, courts look at the nature of the plaintiff's loss. *See Sterling Chems, Inc. v. Texaco, Inc*., 259 S.W.3d 793, 796-98 (Tex. App–Houston [1st Dist.] 2007). A claim in tort will not lie when the only injury alleged is for economic damages that are caused by the failure to perform a contract. *Id.* Nevertheless, a plaintiff may bring a tort claim if he can establish that he suffered an injury independent of the economic losses caused by the breach of contract. In *Century Surety Co. v. Hardscape Const. Specialties, Inc.*, 578 F.3d 262, 270 (5th Cir. 2009), the Court of Appeals for the Fifth Circuit noted that while the plaintiff's cause of action for faulty pool and deck construction sounded

8

solely in contract, if the plaintiff had alleged that the faulty construction *separately* damaged its business interests or adjacent property, it might have had a tort cause of action as well.

In this case, Plaintiff's fraud claim is based on Defendants' purported lack of authority to assign the Deed and foreclose on the Property. Plaintiff has not alleged any independent injury outside of the economic losses caused by those actions, and therefore he cannot state a claim for fraud. Accordingly, that claim should be dismissed with prejudice. *See McConathy*, 131 F.3d at 561-62.

### 6. Fair Debt Collection Practices Act ("FDCPA")

Plaintiff claims that BONYM allowed unnamed third party debt collectors to violate the FDCPA despite the fact that it has no standing or authority to collect on the Note due to the broken chain of assignments. Doc. 1-2 at 17. Defendant argues that Plaintiff failed to allege that BONYM is a debt collector as relates to Plaintiff and, in any event, foreclosure pursuant to a deed of trust is not the "collection of a debt" within the meaning of the FDCPA. Doc. 6 at 23.

Plaintiff's FDCPA claims fail as a matter of law. The FDCPA expressly excludes from its definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). This FDCPA exclusion encompasses mortgage servicing companies and debt assignees as long as the loan was not in default at the time it was assigned by the originator. *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 723 (5th Cir. 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)). Applied to the current facts, neither MERS, as the former servicer of the loan, nor BONYM, as the debt assignee, is a debt collector within the meaning of the FDCPA because the Millers' loan was not in default at the time of the April 2011 assignment of

the Deed from AMF to BONYM.  Thus, dismissal with prejudice of this claim is warranted.  *See McConathy*, 131 F.3d at 561-62.

>    7.  *Declaratory Judgment and Injunctive Relief*

Defendants assert that Plaintiff is not entitled to declaratory relief or an injunction barring the foreclosure sale because he has no underlying meritorious claim for relief.  Doc. 6 at 24-25. Plaintiff responds by reiterating his argument that AMF did not properly assign the Deed during the April 2011 transaction.  Doc. 9 at 9-11.

Liberally construing his *pro se* complaint in light of the removal of his case to federal court, Plaintiff seeks a declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.  *See Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, *5 n.11 (N.D. Tex. 2011) (stating that when a state-filed declaratory judgment action is removed to federal court, it is converted into an action brought under the federal Declaratory Judgment Act).  That Act provides that any federal court may declare the rights and legal relations of any interested party.

Declaratory and injunctive relief requests are not substantive causes of action, however, and cannot be sustained without a *viable* underlying cause of action.  *Green v. JPMorgan Chase Bank, N.A.*, 937 F.Supp.2d 849, 864-65 (N.D. Tex. 2013) *aff'd*, *Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238 (5th Cir. 2014) *cert. denied*, 135 S. Ct. 220 (2014).  In that vein, one of the elements a plaintiff must establish to secure injunctive relief is that he has a substantial likelihood of success on the merits.  *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).  In this case, Plaintiff's claims for declaratory and injunctive relief depend on the previously rejected split the note theory.  Accordingly, his requests for declaratory and injunctive relief fail and should be dismissed with prejudice.

### III. LEAVE TO AMEND

Ordinarily, Plaintiff should be granted leave to amend his complaint prior to dismissal. *See Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) ("A pro se litigant should be offered an opportunity to amend his complaint before it is dismissed."). However, as detailed herein, all of Plaintiff's claims are either factually frivolous or not legally cognizable. Under these circumstances, granting leave to amend would be futile and cause needless delay. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."). Accordingly, all of Plaintiff's claims should be dismissed with prejudice. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations).

### IV. CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss for Failure to State a Claim*, Doc. 6, should be **GRANTED**, and Plaintiff's *Objection to Notice of Removal*, Doc. 7, should be **OVERRULED**. Although AMF was not properly served with process and never appeared in this matter, when other defendants establish that the plaintiff has no cause of action, as in this case, this defense generally inures to the benefit of other similarly situated defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). Because Defendants' dismissal motion

disposes of all of the claims raised in the complaint, the undersigned also recommends dismissal with prejudice of Plaintiff's claims against AMF.

**SO RECOMMENDED** on October 29, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE